LOLLEY, J.,
dissenting.
| |I respectfully dissent from the ruling of the majority in this matter.
The present matter involves the request of petitioner to terminate the parental rights of the biological father of the child. Proper notice was obviously served on the biological father who retained counsel to represent him in these proceedings.
The proceedings were initiated because of petitioner’s desire to adopt the child who was born of her late mother prior to her marriage to petitioner.[1]
The record clearly shows that the child had lived with her mother and stepfather consistently until the mother’s death. Subsequent to the event, petitioner initiated procedures to adopt the child. However, to move forward with the adoption, the parental rights of the biological father had to first be terminated. A petition for involuntary termination of parental rights was filed in accordance with the provisions of the Louisiana Children’s Code.
The record further indicates that another judge was initially assigned to hear this matter. However, that judge exercised recusal because of familiarity with the petitioner and other members of the Caddo Parish Sheriffs Department. The present judge was assigned, and the proceedings got underway.
1 .¿The hearing was called into session and evidence was presented. At the conclusion of the hearing the court ordered that the parental rights of the biological father were terminated and that the child be freed for the purpose of adoption.
I am of the opinion that reversible error occurred during the proceedings and that the judgment/ruling of the juvenile court judge should be reversed and ultimately declared null.
A petition to terminate the parental rights of a biological parent is the most serious of all actions contemplated by the Louisiana Children’s Code. This petition, whether advanced by the State of Louisiana or, as in the present matter, by the stepparent for purpose of potential adoption, sets the stage to forever sever what is amongst the strongest bonds, that of parent and child. It is, in fact and law, the parental death penalty. Additionally, because of the serious nature of the proceedings and its lasting consequences, a termination of parental rights proceeding has attached to it the second highest burden of proof in law, that of clear and convincing evidence.
The biological father has appealed the ruling of the juvenile court judge on *1011 grounds that the allegation did not rise to the level of clear and convincing evidence and on grounds that there was a serious breach of the rule(s) of sequestration at the termination of parental rights hearing itself.
A review of the entire record of these proceedings leads me to conclude that the actions/inactions of the juvenile court judge did, in fact, lead to serious and fatal breaches of the mandated rules of sequestration.
| ^Hearings and the issues of sequestration are extensively discussed in the Louisiana Children’s Code. Article 408 states that it is the duty of the judge to control the proceedings. Article 409 mandates sequestration of witnesses. In matters involving children in need of care, Art. 661 mandates who may be present at the proceedings. Article 1015 deals specifically with termination of parental rights. The sequestration effects of the above articles also are applicable to a termination of parental rights proceedings. Title XII of the Louisiana Children’s Code deals specifically with the issues of adoption. Article 1184 specifically addresses admission to adoption hearings. It also specifically mandates sequestration at the hearing.
The thrust of all of the above articles in the Louisiana Children’s Code is to maintain the confidentiality of the hearings, which are very serious in nature. The reasoning for this is that the parties to the proceedings rightfully should not be subjected to public scrutiny. A notable exception to this, however, is officers of the court.
In the matter before us the petitioner was, and is, a deputy sheriff employed by the Caddo Parish Sheriffs Office. The record clearly reflects that he was wearing his uniform during the entirety of the proceedings.[2] The record also reflects that other uniformed deputies entered the courtroom, sat down and observed the proceedings at the time. This was noted by both the biological father and his counsel. The biological father |4now urges, rightfully in my opinion, that this constitutes a fatal breach of the sequestration rule and that the decision of the juvenile judge should be reversed and the matter be sent back for another hearing.
As previously stated, officers of the court are generally exempted from the sequestration order and allowed to remain or enter the courtroom. I am of the opinion that this exception to sequestration applies only to officers of the court who are assigned to work that courtroom on that date on that case. Because of the nature of the case I am of the opinion that all others are subject to the sequestration rule/order and that it was error to allow their presence in the courtroom.
The majority is of the opinion that this complaint is of no consequence and should not be considered because a contemporaneous objection was not raised by counsel at the time(s) of occurrence. I disagree.
I am of the opinion that the error on the part of the juvenile judge was structural in nature and effect and therefore, any contemporaneous objection was not needed because the proceedings had become a nullity. The issues of structural error have been discussed by other courts of this state, including the Louisiana Supreme Court. It is error which by its very nature is not subject to a harmless error analysis. It impacts the entire framework of the trial from beginning to end without reference to any other trial consideration.
*1012 In the matter presently before this court I am of the opinion that the actions of the juvenile court judge failed in the area of maintaining a sequestered courtroom and in maintaining his duty to control the | ^proceedings in the courtroom as mandated by Art. 408. In a proceeding such as this, any officers of the court cannot and should not casually come and go in a sequestered courtroom.
In a proceeding such as the one discussed here, it is of vital importance that all parties leave the courtroom with the feeling and/or opinion that they clearly received their fair day in court. With the stakes as high as they are in a termination of parental rights hearing for the purpose of adoption, these issues are of great importance. It is more important that a civilian with little or no knowledge of proceedings such as these leave the courtroom without feeling the chilling effect of the errors I believe were committed. He, like all others, has the absolute right to be afforded all of the due processes of the law applicable to the case as he stands before the court to answer to.
Accordingly, I respectfully dissent.

. The record also clearly indicates that respondent was identified as the biological father through DNA testing.

. I feel that the issue of petitioner being in uniform is of no consequence. He could well have been just coming off duty or reporting to duty after the hearing.